IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          **Crim. Action No. 5:22-CR-18**
                                                          Judge Bailey

**EUGENE CHARLES WILLIAMS, JR.,**

    Defendant.

## ORDER ADOPTING AMENDED REPORT AND RECOMMENDATION

The above referenced case is before this Court upon the magistrate judge's recommendation that defendant's Motion to Suppress be granted. *See* [Doc. 22].

I. **Background**

Magistrate Judge Mazzone's Report and Recommendation ("R&R") accurately summarizes the basis of the above-styled case:

> Defendant was indicted on June 7, 2022, on one count of Unlawful Possession of a Firearm, and one count of Obliterated Serial Number. The indictment arises out of Defendant's contact with police officers on January 17, 2022, in Brooke County, in the Northern District of West Virginia. On that date, Defendant was involved in a single-car accident at approximately 6:30pm while traveling on US Route 22 Eastbound at or near the Three Springs Drive exit in Weirton, WV. Officers encountered Defendant's vehicle after it slid off the roadway and came to a rest on top of a light pole. Officers

asked Defendant for his driver's license, which Defendant provided, and proof of insurance. Proof of insurance was on Defendant's phone, and he appeared to be having a hard time retrieving the information. Officers believed Defendant needed medical attention. While EMTs attended to Defendant in an ambulance at the scene, officers entered Defendant's vehicle without a warrant, looking for Defendant's insurance card. In the center console, Officers found a loaded Remington, RP9, 9mm handgun. The serial numbers had been filed down so that the same were unreadable. That handgun forms the basis of the instant indictment.

[Doc. 22 at 1–2].

## II.  Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). Nor is this Court required to conduct a *de novo* review when the party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." ***Orpiano v. Johnson***, 687 F.2d 44, 47 (4th Cir. 1982).

In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v. Ridenour***, 889

F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). *Pro se* filings must be liberally construed and held to a less stringent standard than those drafted by licensed attorneys, however, courts are not required to create objections where none exist. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1971).

Here, objections to Magistrate Judge Mazzone's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure. The Government timely filed its objections [Doc. 25] on September 8, 2022. Accordingly, this Court will review the portions of the R&R to which objection was filed under a *de novo* standard of review. The remainder of the R&R will be reviewed for clear error.

## III. Discussion

The Government raises two (2) objections to the R&R. First, the Government objects to Magistrate Judge Mazzone's determination that the search for the insurance card was not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of the criminal statute." *See* [Doc. 25 at 2–4]. Relying on *Durney v. Doss*, 106 F.App'x 166, 168 (4th Cir. 2004) and *United States v. Scott*, 428 F.Supp.2d 1126 (E.D. Ca. 2006), the Government argues that completing accident reports and documenting traffic accidents is part of the community caretaking functions of police. *See Durney*, 106 F.App'x at 168 ("As noted by the Supreme Court, '[l]ocal police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what . . . may be described as community caretaking functions, totally divorced

from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."). The Government asserts that "if Officer Ammann and Officer Thompson were acting on the presumption that Mr. Williams was being truthful when he stated [he] had insurance, it is not unreasonable to conclude that there might have been older insurance cards in the vehicle that would have the insurance policy number on it – something that Officer Amman asked Officer Thompson for." *See* [Doc. 25 at 4].

This Court cannot agree that Officer Ammann and Officer Thompson's search was "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of the criminal statute." Officers Ammann and Thompson pursued a search for defendant's insurance card in connection with what officers believed to be defendant violating a statute—specifically, W.Va. Code § 17D-2A-3. It is clear from the evidence that the search of defendant's vehicle was conducted to determine whether defendant had valid insurance on the vehicle, and whether he violated the law. Officer Ammann saw defendant struggle to locate the insurance on his cell phone, and told defendant that he could provide proof of insurance after he had been checked out by the EMTs. There are no facts to lead this Court to believe that defendant was unable to respond to the officers. He was sitting in the ambulance on the scene of the accident. He already stated he would find the proof of his insurance on his cell phone. As Magistrate Judge Mazzone stated, "Officers . . . could have simply asked Mr. Williams to see proof of his insurance, rather than searching his vehicle." *See* [Doc. 22 at 14]. Moreover, defendant stated the insurance card was on his cell phone. At the time of the search, defendant was in the ambulance. If the officers wanted proof of insurance, they should have requested permission to search defendant's cell phone or request that defendant find the proof of insurance.

4

Moreover, this Court agrees with Magistrate Judge Mazzone that the community caretaking exception to the warrant requirement does not include completion of officers' paperwork. "Officers have an interest in completing paperwork. Members of the community typically do not. Additionally, the cases which involve the community caretaking exception usually involve officers taking steps to ameliorate some element which constitutes a threat to the community's safety and/or wellbeing." *See* [Doc. 22 at 15]. Like Magistrate Judge Mazzone, this Court does not conclude that completing paperwork falls into the community caretaking category.

The Government's first objection is **OVERRULED**.

Second, the Government objects to Magistrate Judge Mazzone's determination that because defendant was at the location the police could not have legally conducted an inventory search. *See* [Doc. 25 at 4–7]. The Government asserts that defendant "was unavailable in the ambulance at the time that Officer Thompson went through the vehicle looking for insurance and registration. The Government states it would have been "unreasonable to wait for [defendant] to be treated, have him get out of the ambulance, walk down into the snow, back over the light pole, check his vehicle for any belongings and secure it, and then walk back to the ambulance to be taken to the hospital prior to the tow truck hooking up the vehicle to tow it away. . . ." *See* [Id. at 6]. Moreover, relying on **United States v. Brown**, the Government argues that the inventory search was valid because the vehicle was in the lawful custody of the police, the inventory was routine, it was conducted according to standard procedures and the purpose was to secure the car and its contents and not to gather incriminating evidence. 787 F.2d 929 (4th Cir. 1986).

Pursuant to the officers' own Weirton Police Department's Towing Policy ("Towing Policy"), an inventory search was not required. The Towing Policy states:

> Officers are not required to conduct vehicle inventories when the vehicle is towed at the owner/operator's request, or when the owner/operator is present when the vehicle is towed.

[Doc. 21-2 at 4].

This Court cannot hold that the gun would have been located on an inventory search seeing as no inventory search was required in this specific instance. Relying on **Brown**, the inventory search was *not* routine, it was *not* conducted according to standard procedures, and the purpose was *to* gather incriminating evidence–i.e., proof of insurance or lack thereof. The officers search went against the standard procedures of the Towing Policy. Defendant was present on scene and was coherent and responsive when his vehicle was towed. Thus, and pursuant to their own Towing Policy, there was no reason for the officers to conduct an inventory search.

Moreover, Officer Thompson testified that he was conducting an inventory search when he located the gun, an action directly in contradiction to the Towing Policy. He also admitted that he did not prepare the Vehicle Inventory Report as required by the Towing Policy. *See* [Doc. 21-2 at 4]. This evidence also cuts against Officer Thompson's assertion that he conducted an inventory search of defendant's vehicle. Thus, the Government's second objection is **OVERRULED**.

## IV. Conclusion

It is the opinion of this Court that the Report and Recommendation [**Doc. 22**] should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. Mr. Williams' Motion to Suppress Evidence [**Doc. 15**] is **GRANTED**. Moreover, the Government's Objections [Doc. 25] are **OVERRULED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** October 6, 2022.

JOHN PRESTON BAILEY
**UNITED STATES DISTRICT JUDGE**